IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMPAIGN LEGAL CENTER<br>1411 K St. NW, Suite 1400<br>Washington, DC 20005<br><br>  Plaintiff,<br><br>  v.<br><br>GENERAL SERVICES ADMINISTRATION<br>1800 F St. NW<br>Washington, DC 20006<br><br>  Defendant. | Case No. |

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. This action is brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the General Services Administration to produce Senior Federal Travel Reports responsive to a September 27, 2017 FOIA request seeking travel records documenting the use of government aircraft by senior federal officials and non-federal travelers.

**JURISDICTION AND VENUE**

2. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B), (a)(6)(C)(i), and 28 U.S.C. § 1331. Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

**PARTIES**

3. Plaintiff Campaign Legal Center ("CLC") is a nonpartisan, nonprofit legal organization that, among other activities, monitors and assesses senior federal officials' compliance with government ethics laws, regulations, and best practices. As part of its efforts to ensure that the government works for the public benefit rather than private gain, CLC publicizes,

through reports, articles, and media appearances, violations of such laws, regulations, and best practices in order to advocate for corrective measures to ensure compliance.

4. Defendant General Services Administration ("GSA") is an independent agency in the Executive Branch of the United States Government. GSA is an agency within the meaning of 5 U.S.C. § 552(f). GSA had possession and control of the requested records at the time of the original FOIA request and maintains both possession and control.

## STATEMENT OF FACTS

5. On September 27, 2017, CLC submitted to GSA a FOIA request for Senior Federal Travel Reports. *See* Ex. 1 (9/27/17 FOIA Letter). GSA had possession of these reports pursuant to GSA regulations, which require all federal agencies who operate aircraft to report to GSA "all uses of [their] aircraft for travel by any senior Federal official or non-Federal traveler." 41 C.F.R. § 301-70.906. Agencies must submit these reports through a portal housed on GSA's website. *Id*. GSA requires agencies to submit these reports on a semi-annual basis and ensure they contain "information about Senior Federal officials and non-Federal travelers who fly aboard [their] aircraft," including details about the trips' purposes and the costs incurred. *Id*. § 301-70.907. GSA stores these reports and uses the data they contain to compile reports of its own. *See, e.g.,* Fiscal Year 2015 Senior Federal Travel Annual Report, U.S. Gen. Servs. Admin. (2016), https://www.gsa.gov/cdnstatic/FY_2015_Senior_Federal_Travel_Summary_6-10-16.pdf. The reports are thus agency records of GSA.

6. CLC requested expedited processing of its request, reflecting the exceptional media interest in senior federal officials' travel practices. *See* Ex. 1 at 5-6 (citing 28 C.F.R. § 16.5(e)(1)(iv)). On September 21, 2017, *Politico* had reported that then-Secretary of Health and Human Services Tom Price had taken more than 20 trips on chartered aircrafts that cost

taxpayers a total of over $300,000.[1] Price has since resigned from office and has offered to reimburse taxpayers for these costs.[2] His resignation was forced in large part by the negative publicity stemming from this travel—records of which were difficult for the media to uncover due to the government's lack of transparency.[3] In its FOIA request, CLC also cited media reports that Secretary of Transportation Elaine Chao and Secretary of the Treasury Steven Mnuchin had traveled on a United States Air Force jet between New York City and Washington, D.C., at an estimated cost to taxpayers of at least $25,000.[4]

7. Since CLC's initial FOIA request, the public's interest in senior federal officials' taxpayer-expensed travel has only increased. Media outlets and government agencies have reported on even more Cabinet member travel at high taxpayer expense. The Office of the Inspector General at the U.S. Department of Veterans Affairs issued what was described as a "scathing" report that found "serious derelictions"[5] in a trip taken by then-Secretary of Veterans

---

[1] Rachana Pradhan & Dan Diamond, *Price Traveled by Private Plane at Least 24 Times*, Politico (Sept. 21, 2017), http://www.politico.com/story/2017/09/21/tom-price-private-charter-plane-flights-242989; Dan Diamond & Rachana Pradhan, *How We Found Tom Price's Private Jets*, Politico (Oct. 4, 2017), https://www.politico.com/magazine/story/2017/10/04/how-we-found-tom-prices-private-jets-215680. CLC cited this story in its FOIA request. *See* Ex. 1 at 1 n.1.

[2] *See* Peter Baker, Glenn Thrush & Maggie Haberman, *Health Secretary Tom Price Resigns After Drawing Ire for Chartered Flights*, N.Y. Times (Sept. 29, 2017), https://www.nytimes.com/2017/09/29/us/politics/tom-price-trump-hhs.html.

[3] *Id.*

[4] Justin Fishel & Elizabeth McLaughlin, *Mnuchin's Travel: Investigators Now Probing Another Costly Government Flight*, ABC News (Sept. 22, 2017), http://abcnews.go.com/Politics/mnuchins-travel-investigators-now-probing-costlygovernment-flight/story?id=50006219. CLC cited this story in its FOIA request. *See* Ex. 1 at 1 nn.2-3.

[5] Dave Philipps, *Report Faults V.A. Secretary Shulkin over Travel to Europe*, N.Y. Times (Feb. 14, 2018), https://www.nytimes.com/2018/02/14/us/veterans-affairs-shulkin.html.

Affairs David Shulkin.[6] Shulkin had spent over $120,000 in taxpayer funds for a trip to Europe that "included airfare for his wife and extensive sightseeing."[7] Shulkin, like Price, has resigned from office.[8] Earlier this month, the Office of the Inspector General at the Interior Department concluded that Secretary of the Interior Ryan Zinke took a charter flight to visit a professional hockey team, at a taxpayer-funded cost of $12,000 that "could have been avoided," and that Zinke had also incurred over $185,000 in costs for travel on government aircraft.[9] Scott Pruitt, the Administrator of the Environmental Protection Agency, has joined Secretaries Chao, Mnuchin, Zinke, and now-former Secretaries Price and Shulkin in ensnaring himself in travel-related scandal, spending more than $163,000 in taxpayer funds on a series of first-class, military, and charter flights.[10] It was recently revealed that Pruitt would identify destinations that he wanted to visit and instruct staff to "[f]ind [him] something to do," to justify billing taxpayers for the expense.[11]

---

[6] Office of Inspector Gen., U.S. Dep't of Veterans Affairs, Administrative Investigation: VA Secretary and Delegation Travel to Europe, at ii (2018), https://www.va.gov/oig/pubs/VAOIG-17-05909-106.pdf.

[7] Philipps, *supra* note 5.

[8] Steve Holland, *Trump Pushes Out Shulkin at VA, Nominates Jackson as Replacement*, Reuters (Mar. 28, 2018), https://www.reuters.com/article/us-usa-trump-veterans/trump-pushes-out-shulkin-at-va-nominates-jackson-as-replacement-idUSKBN1H439J.

[9] Office of Inspector Gen., U.S. Dep't of the Interior, Investigative Report on Secretary Zinke's Use of Chartered and Military Aircraft Between March and September 2017, at 2 (2018), https://www.doioig.gov/sites/doioig.gov/files/WebRedacted_ZinkeTravel_Public_041618.pdf.

[10] Dan Mangan, *EPA Chief Scott Pruitt Took First-Class, Military, Charter Flights that Cost Taxpayers More than $163,000 in First Year Alone: Report*, CNBC (Mar. 21, 2018), https://www.cnbc.com/2018/03/21/epa-chief-scott-pruitt-took-flights-costing-taxpayers-163000.html.

[11] Eric Lipton & Lisa Friedman, *Lawmakers' Letter Claims Further Spending Abuses by the E.P.A. Head, Scott Pruitt*, N.Y. Times (Apr. 12, 2018), https://www.nytimes.com/2018/04/12/climate/pruitt-epa-ethics-letter-congress.html.

8. CLC requested a fee waiver in its initial request, reflecting its desire to "gather[] information of potential interest" on senior federal officials' travel and "use[] its editorial skills to turn the raw materials into a distinct work . . . [to] distribute[] . . . to an audience." *See* Ex. 1 at 4 (quoting 5 U.S.C. § 552(a)(4)(A)(ii)(II)-(III)). This is what CLC's Ethics program does on a daily basis. It monitors and assesses the practices of senior federal officials in order to publicize violations of the public trust, including the abuse of taxpayer-funded travel by those at the highest levels of government.

9. On October 19, 2017, GSA denied CLC's FOIA request. *See* Ex. 2 (10/19/17 Denial of FOIA Letter). GSA acknowledged that 41 C.F.R. § 301-70.907 requires agencies to report to GSA the use of government aircraft to carry senior federal officials and non-federal travelers, but asserted that agencies "maintain ownership of their travel data and determine how that data is made available to the public." *Id.* at 1.

10. On February 7, 2018, CLC appealed GSA's denial. *See* Ex. 3 (2/7/18 Letter Appealing Denial). In its letter appealing the denial, CLC highlighted several areas of the relevant law that, in its view, made GSA's denial an illegal withholding under FOIA. CLC also noted to GSA that the net effect of the denial was to force CLC to submit requests to over one hundred other agencies.[12] Ex. 3 at 3.

11. On February 26, 2018, GSA denied CLC's appeal. *See* Ex. 4 (2/26/18 Letter Denying Appeal). GSA's denial of the appeal did not address the case law CLC had brought to the agency's attention that specifically cited as "highly difficult to justify" a denial compelling

---

[12] In its appeal, CLC indicated that GSA's referral procedure would require CLC to submit FOIA requests to 130 other agencies. Ex. 3 at 3. In reality, the number might be far higher, as there are at least 254 sub-agencies in the Executive Branch; *see* Executive Department Sub-Agencies and Bureaus, USA.gov, https://www.usa.gov/sub-agencies (last visited Apr. 18, 2018).

requestors "to submit separate requests to a number of independent bodies." *See* Ex. 3 at 3 (quoting *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983).

## CAUSE OF ACTION

*Violation of Freedom of Information Act for Wrongful Withholding of Agency Records*

12. Plaintiff repeats and realleges paragraphs 1-11.

13. Defendant's failure to make available the records sought by the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), and has no basis in applicable statutes or judicial precedent.

14. Plaintiff has exhausted the applicable administrative remedies with respect to defendant's denial of plaintiff's FOIA request.

15. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

## REQUESTED RELIEF

WHEREFORE, plaintiff requests that this Court:

    A. order defendant to process immediately, on an expedited basis, the requested records in their entirety, with all processing fees waived;

    B. order defendant, upon completion of such processing, to disclose the requested records in their entirety to plaintiff;

    C. order defendant to produce a Vaughn Index to the extent it claims a FOIA exception or privilege applies to any document or part thereof;

    D. award plaintiff its costs and reasonable attorneys' fees incurred in this action; and

    E. grant such other relief as the Court deems just and proper.

Dated: April 30, 2018                          /s/ Adav Noti
                                               Adav Noti (D.C. Bar No. 490714)
                                               Mark P. Gaber (D.C. Bar No. 988077)
                                               CAMPAIGN LEGAL CENTER
                                               1411 K Street NW, Ste. 1400
                                               Washington, D.C. 20005
                                               (202) 736-2200
                                               anoti@campaignlegalcenter.org
                                               mgaber@campaignlegalcenter.org

                                               *Counsel for Plaintiff*